1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| UNITED STATES OF AMERICA, | NO. 2:14-cr-00339-RAJ |
|---|---|
| Plaintiff, | |
| v. | ORDER ON DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE |
| WILLIAM MITCHELL, | |
| Defendant. | |

**I. BACKGROUND**

This matter comes before the Court on Defendant William Mitchell's motion for compassionate release. Dkt. 48. Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby **DENIES** the motion for the reasons explained herein.

Mr. Mitchell is serving his current sentence after pleading guilty to nine counts of Bank Robbery and one count of Interference of Commerce by Robbery. At his plea hearing on June 16, 2015, Mr. Mitchell agreed to the following facts as set forth in the plea agreement:

Count 1: On July 5, 2012, Mr. Mitchell entered a bank in South Burlington, Vermont. He displayed to the teller what appeared to be a firearm, but was in fact a

ORDER - 1

pellet gun.  Mr. Mitchell demanded money and the teller complied, giving him approximately $3,080.

Count 2:  On April 4, 2014, Mr. Mitchell entered a bank in Naples, Florida.  He displayed to the teller what appeared to be a firearm, but was in fact a pellet gun.  Mr. Mitchell demanded money and the teller complied, giving him approximately $5,600.

Count 3:  On May 23, 2014, Mr. Mitchell entered a bank in Ocean Springs, Mississippi.  He displayed to the teller what appeared to be a firearm.  Mr. Mitchell demanded money and the teller complied, giving him approximately $3,000.

Count 4:  On May 30, 2014, Mr. Mitchell entered a bank in Manchester, New Hampshire.  He displayed what appeared to be a firearm and yelled "Nobody move!"  Mr. Mitchell demanded money and the teller complied, giving him approximately $4,000.

Count 5:  On July 28, 2014, Mr. Mitchell entered a bank in Seattle, Washington.  He displayed what appeared to be a handgun, pointed it at the tellers, and demanded, "Cash now!  Cash now!"  The teller complied and gave him approximately $890.  Mr. Mitchell admitted he displayed a real firearm (a .22 caliber revolver) during this robbery.

Count 6:  On July 29, 2014, Mr. Mitchell entered a bank in Seattle, Washington.  He displayed what appeared to be a handgun in his waistband and said to the teller, "Give me all your hundreds and fifties.  Don't say anything or I will shoot you."  The teller complied and gave him approximately $4,065.  Mr. Mitchell admitted he displayed a real firearm (a .22 caliber revolver) during this robbery.

Count 7:  On October 2, 2014, Mr. Mitchell entered a bank in Santa Barbara, California.  He displayed what appeared to be a firearm to the teller and demanded money.  The teller complied and gave him approximately $11,000.

Count 8:  On October 30, 2014, Mr. Mitchell entered a bank in Olympia, Washington.  He displayed what appeared to be a handgun in his waistband and demanded "hundreds and fifties."  The teller complied and gave him approximately $950.

ORDER  - 2

1    Count 9:  On November 7, 2014, Mr. Mitchell entered a credit union in Spokane,

2  Washington.  He approached a teller and said, "Give me your money.  I am armed."  The

3  teller complied and gave him approximately $100.

4    Count 10:  On September 11, 2014, Mr. Mitchell entered the jewelry department

5  of the Nordstrom department store in downtown Seattle, Washington.  He approached

6  two salespeople and asked to see various items of jewelry.  Mr. Mitchell then displayed

7  what appeared to be a firearm and said, "The jewelry is not yours.  If you try and follow

8  me or have me followed, I will shoot you both."  Mr. Mitchell fled with three items of

9  jewelry with a total value of $23,040.

10    Mr. Mitchell admits he used threatened force, violence, or fear when committing

11  the above described crimes.  Dkt. 31.

12    On January 22, 2016, this Court sentenced Mr. Mitchell to a 127-month term of

13  imprisonment, imposed three years of supervised release to follow, and ordered him to

14  pay $55,575 in restitution.  Dkt. 46.

15    Mr. Mitchell is currently housed at FCI Yazoo City Low, with a projected release

16  date of January 25, 2024.

17    On June 3, 2020, Mr. Mitchell filed the instant motion for compassionate release,

18  requesting the Court reduce his custodial sentence to time served, with the remainder

19  converted to home confinement and/or participation in a residential reentry center

20  program for up to 180 days, with the originally ordered term of supervision to begin

21  immediately upon his release.  As an alternative, if the Court were to determine early

22  release is not warranted, Mr. Mitchell has requested the Court direct the Bureau of

23  Prisons to transfer him to a medical facility or to a Bureau of Prisons facility which has

24  not experienced an outbreak of coronavirus 19 (COVID-19).  Dkt. 48, 56.

25    Mr. Mitchell's motion sets forth four principal arguments he contends present

26  extraordinary and compelling reasons for his immediate release:  his age, race, and

27  compromised health, combined with the current situation at Yazoo City Low related to

28  the outbreak of the COVID-19 global pandemic.

ORDER  - 3

Mr. Mitchell is a 61-year-old African American man.  He claims his age and race, combined with his medical conditions which include a history of high blood pressure and physical impairments due to a fracture of his C-5 vertebrae, place him at greater risk of suffering severe complications should he contract the virus.  He contends FCI Yazoo City Low is unable to manage the pandemic, as evidenced by its high number of positive cases of COVID-19, including some deaths.  Mr. Mitchell argues his release to the less risky environment of supervised release, home confinement, or a residential reentry program would not only protect him from increased risk of contracting COVID-19 and suffering complications associated with the virus, but also reduce the prison's overcrowding, improve staff-to-inmate ratios to inhibit the spread of the disease, and lessen the risks to other inmates.  Mr. Mitchell contends he would not pose a danger to the community if released.  Dkt. 48.

The government responds that because Mr. Mitchell has not presented extraordinary and compelling reasons for a reduction in sentence, and because he continues to present a danger to the community, his motion for compassionate release should be denied.  The government argues that other than the general factors of his age and race, Mr. Mitchell has not made a showing that he has a specific medical condition that places him at risk for COVID-19, and that even if he does suffer from high blood pressure, the Centers for Disease Control (CDC) indicates high blood pressure only becomes a risk factor in connection with serious heart conditions.  Moreover, the government notes Mr. Mitchell's medical records do not contain evidence that he suffers from high blood pressure.  Additionally, the records do not contain an indication that Mr. Mitchell has tested positive for COVID-19.  Finally, the government notes that Mr. Mitchell's claim to be at higher risk to become severely ill from COVID-19, and that his risk of contracting COVID-19 while in custody is significantly higher than if he were to be released, is a claim that would apply to everyone in confinement and does not constitute extraordinary and compelling reasons to grant Mr. Mitchell's motion.  Dkt. 51.

ORDER  - 4

1    The government states that even if Mr. Mitchell was able to establish he has been

2    diagnosed with medical conditions that place him at greater risk, releasing him would

3    present a significant danger to others and to the community.  Dkt. 51.

4        As to Mr. Mitchell's argument his age places him at higher risk, the government

5    indicates the CDC lists those at higher risk as individuals age 65 and older.  Mr. Mitchell

6    is currently 61 years of age, and therefore not within the group with that particular risk

7    factor.  Dkt. 51.

8        While the government does not dispute that African Americans and other

9    minorities have suffered disproportionately during the pandemic, it points to the

10   suggestion of the CDC that the disproportionate rate of severe outcome is due to living

11   conditions, work circumstances, lack of access to health care, and underlying health

12   conditions.  The government argues that the singular fact that Mr. Mitchell is African

13   American does not elevate his risk of suffering from complications if he were to contract

14   COVID-19.  The government outlines in detail the steps being taken by the Bureau of

15   Prisons at FCI Yazoo City Low to address the spread of the virus.  Dkt. 51.

16       Finally, the government sets forth Mr. Mitchell's lengthy criminal history,

17   indicating Mr. Mitchell would be a danger to others and to the community should his

18   sentence be reduced to time served and he be released under any of the conditions

19   proposed by Mr. Mitchell.  For these reasons, the government argues Mr. Mitchell's

20   motion for compassionate release should be denied.  Dkt. 51.

## II. DISCUSSION

### A.    Legal Standard for Compassionate Release

24   18 U.S.C. § 3582(c)(1)(A) allows a court to reduce a term of imprisonment if

25   "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is

26   consistent with applicable policy statements issued by the Sentencing Commission."  The

27   Sentencing Commission's policy statement, in turn, says that a court may reduce a term

28   of imprisonment if "the defendant is not a danger to the safety of any other person or to

the community" and "extraordinary and compelling reasons warrant such a reduction."
United States Sentencing Guidelines ("USSG") § 1B1.13.  The policy statement clarifies
that such reasons exist when (1) "the defendant is suffering from a terminal illness" or (2)
"the defendant is suffering from a serious physical or mental condition . . . that
substantially diminishes the ability of the defendant to provide self-care within the
environment of a correctional facility and from which he or she is not expected to
recover."  USSG § 1B1.13 cmt. n.1.  The policy statement also directs a court to consider
the factors set forth in 18 U.S.C. § 3553(a) in deciding whether compassionate release is
appropriate and what form compassionate release should take.  USSC § 1B1.13 cmt. n.4.

   Mr. Mitchell's motion seeks a reduction in sentence under 18 U.S.C.
§ 3582(c)(1)(A), as amended by the First Step Act of 2018.  As amended,
§ 3582(c)(1)(A) permits an inmate, who satisfies certain statutorily mandated conditions,
to file a motion with the sentencing court for "compassionate release."  As relevant to
Mr. Mitchell's motion, the statute now provides:

> (c) Modification of an imposed term of imprisonment. --The court
> may not modify a term of imprisonment once it has been imposed
> except that--
>
> (1) in any case--
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or
> upon motion of the defendant after the defendant has fully exhausted
> all administrative rights to appeal a failure of the Bureau of Prisons to
> bring a motion on the defendant's behalf or the lapse of 30 days from
> the receipt of such a request by the warden of the defendant's facility,
> whichever is earlier, may reduce the term of imprisonment (and may
> impose a term of probation or supervised release with or without
> conditions that does not exceed the unserved portion of the original
> term of imprisonment), after considering the factors set forth in
> section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction;
>
> . . .
>
> and that such a reduction is consistent with applicable policy
> statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

The relevant statute gives this Court authority to reduce a previously imposed sentence if three requirements are satisfied: (1) the inmate has either exhausted administrative review of the Bureau of Prison's failure to bring such a motion, or waited until 30 days after the request was made to the warden where the inmate is housed if that is earlier; (2) the inmate has presented extraordinary and compelling reasons for the requested reduction; and (3) the reduction is consistent with the Sentencing Commission's policy statement.

### B.      Exhaustion of Administrative Remedies

It is undisputed that Mr. Mitchell has met the exhaustion requirement and that his request to this Court is timely.  The parties agree he has met the exhaustion requirement of the First Step Act as he submitted his first request over 30 days ago and his second request to the warden on May 2, 2020, allowing over 30 days to pass by the time he filed his motion.  Dkt. 48, Ex. A, Dkt. 51.

### C.      Extraordinary and Compelling Circumstances

The Court must next determine if extraordinary and compelling circumstances warrant a reduction of Mr. Mitchell's term of imprisonment.  *See* 18 U.S.C. § 3582(c)(1)(A)(i); USSG § 1B1.13.

The policy statement referenced in § 3582(c)(1) was promulgated by the Sentencing Commission pursuant to the authority Congress vested in it in 28 U.S.C. § 994.  That statute provides:

> The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

28 U.S.C. § 994(f).

ORDER  - 7

1      Consistent with this statute, the applicable policy statement can be found at

2   Section 1B1.13 of the United States Sentencing Guidelines. That statement provides:

3          Upon motion of the Director of the Bureau of Prisons under 18 U.S.C.
           § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may
4          impose a term of supervised release with or without conditions that does not
           exceed the unserved portion of the original term of imprisonment) if, after
5          considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they
           are applicable, the court determines that--
6
7          (1)(A) Extraordinary and compelling reasons warrant the reduction…

8          (2) The defendant is not a danger to the safety of any other person or to the
9          community, as provided in 18 U.S.C. 3142(g); and

10         (3) The defendant is not a danger to the safety of any other person or to the
11         community, as provided in 18 U.S.C. § 3142(g); and

12          (4) The reduction is consistent with this policy statement.
    U.S.S.G. § 1B1.13 (2019).
13

14         In the commentary, the Commission goes on to explain what constitutes

15   "extraordinary and compelling reasons" to support a reduction in sentence.

16    Specifically, Application Note 1 provides that extraordinary and compelling reasons

17   exist if the defendant is suffering from a serious physical or medical condition…that

18   substantially diminishes the ability of the defendant to provide self-care within the

19   environment of a correctional facility and from which he or she is not expected to

20   recover."  U.S.S.G. § 1B1.13 cmt.n.1.

21         Mr. Mitchell argues extraordinary and compelling circumstances exist in light of

22   the COVID-19 pandemic itself, focusing mainly on the conditions at the institution where

23   he is housed as it relates to the number of inmates and staff who have contracted the

24   virus, which have included some deaths.  He claims his elevated risk of developing

25   serious complications if he contracts the virus due to his age, race, and compromised

26   health provide further extraordinary and compelling reasons the Court should order his

27   release.  Dkt. 48.

28

ORDER  - 8

1    Mr. Mitchell contends his underlying health conditions of high blood pressure and
2  his physical limitations due to a neck injury render him particularly vulnerable to serious
3  illness and health complications should he contract COVID-19.  He claims to have a
4  history of high blood pressure, but admits he has not recently had his blood pressure
5  tested.  He claims to have a verified history of physical impairments due to a fracture of
6  his C-5 vertebrae, which makes it difficult for him to move in an attempt to maintain
7  social distancing.  Dkt. 48.  However, despite these claims, Mr. Mitchell did not submit a
8  single medical record documenting these medical conditions.

9    When an inmate has health conditions that make them significantly more
10 vulnerable to COVID-19, that may constitute an extraordinary and compelling
11 circumstance.  *See e.g., United States v. Cosgrove,* Case No. CR15-0230-RSM, -F. Supp.
12 3rd-, 2020 WL 1875509 (W.D. Wash. April 15, 2020; *United States v. Dorsey,* Case No.
13 CR16-0138-BLW-JCC, 2020WL 2562878 (W.D. Wash. May 19, 2020).

14 While some courts have held, as argued by the government, that the Sentencing
15 Commission's policy statement on compassionate release remains controlling in the wake
16 of the First Step Act, this Court agrees with the position taken by numerous courts that
17 the "old policy statement provides helpful guidance, [but]…does not constrain [a court's]
18 independent assessment of whether 'extraordinary and compelling reasons' warrant a
19 sentence reduction under § 3852(c)(1)(A)."  *United States v. Cosgrove, Id.; United States*
20 *v. Rodriguez,* 2020 WL 1627331, (E.D. Penn. Apr. 1, 2020; *United States v. Almontes,*
21 2020 WL 1812713 (D. Conn. Apr. 9, 2020); *United States v. Haynes,* No. 93 CR1043
22 (RJD), 2020 WL 1941478 (E.D. N.Y. Apr. 22, 2020); and *United States v. Maumau,* No.
23 2:08-cr-00758-TC-11, 2020 WL 806121 (D. Utah, Feb. 18, 2020).

24 The government states that Mr. Mitchell has made no real attempt to argue that he
25 has a specific medical condition that places him at risk for COVID-19, aside from the
26 suggestion he suffers from high blood pressure.  The government provides evidence by
27 way of Mr. Mitchell's medical records, which the Court agrees fails to support Mr.
28 Mitchell's contentions regarding his compromised health.  The medical records from Mr.

Mitchell's custodial time from 2016 to the present reflect that he has repeatedly denied suffering from high blood pressure and there is no evidence that he has received medication for this condition while incarcerated.  Dkt. 51, Ex. A.

Mr. Mitchell's Compassionate Release Investigation reaffirms the absence of medical record evidence to support his claim.  The Presentence Officer notes that despite Mr. Mitchell's claim that he has a history of high blood pressure, that claim is not noted anywhere in his presentence report or in his BOP medical records.  Probation CR Invest. p. 1.

The cases cited by Mr. Mitchell are equally unpersuasive and inapposite.  *Saad*, No. 16-20197, ECF No. 64, involved a 71-year-old man suffering chronic kidney disease, hypertension, pulmonary hypertension, sleep apnea, with a 2019 diagnosis of recurrent bladder cancer, and his cellmate had tested positive for COVID-19; *Miller v. United States*, No. 16-20222, 2020 WL 1814084 (E.D. Mich. Apr. 9, 2020) involved a 69-year-old man suffering from chronic lung disease, a serious heart condition and liver disease, all of which the CDC affirmed have a higher risk of severe illness; and *United States v. Perez,* No. 17 CR 513-3, 2020 1546422 (S.D.N.Y. Apr. 1, 2020) involved a defendant who had less than three weeks remaining on his sentence and the government conceded that he had a heightened risk of serious illness from a combination of injuries.

In addition, Mr. Mitchell may very well be suffering from an injury to his C-5 vertebrae, but neck injuries are not a recognized risk factor for contracting COVID-19 or for an increased likelihood of suffering complications if infected.

The same holds true for Mr. Mitchell's argument relating to his age.  Individuals over 65 are considered by the CDC to be at higher risk.  At 61 years old, Mr. Mitchell is approaching that age group, but the Court cannot find he has established that his age comprises an extraordinary and compelling circumstance.

Finally, Mr. Mitchell notes that the CDC has indicated that hospitalizations and death rates for African Americans are "substantially higher" than that for whites, adding yet another elevated risk for him, as an African American man.  Dkt. 48.  The

ORDER  - 10

government counters that the CDC's findings are not based on the simple fact that a

person is African American, but that the heightened risk is due to complex societal

realities related to unequal access to health care, work and living environments, and

health conditions which factors have a greater impact on African American individuals.

The main argument set forth in Mr. Mitchell's motion for compassionate release is

that the Bureau of Prisons (BOP) is not responding adequately to the COVID-19

pandemic and is unable to keep Mr. Mitchell safe from contracting the virus.  Mr.

Mitchell's motion sets forth in detail evidence relating to the current conditions at FCI

Yazoo City Low, including that according to BOP reports Yazoo City has one of the

highest rates of inmate infections in the BOP system, and that three inmates in Yazoo

City Low have now died from complications of the disease.  Mr. Mitchell outlines the

steps he has taken to protect his health, including his request to be placed in a segregated

housing unit in an effort to avoid contact with other inmates.  There is no indication Mr.

Mitchell has ever been tested for COVID-19.  Dkt. 48.

In response, the government has set forth in detail evidence relating to the BOP's

efforts to combat and control the spread of COVID-19 in its facilities, including at FCI

Yazoo City Low.  The government argues that Mr. Mitchell's speculative fear of

contracting the virus is insufficient to justify compassionate release, as the Bureau of

Prisons has taken and will continue to take the necessary steps to safely house inmates

during the pandemic.  Dkt. 51.

Finally, the government reasons that because COVID-19 presents a health risk to

everyone, including people who are currently incarcerated, there is no basis to find that

Mr. Mitchell faces a significantly greater risk while in custody than he would face in the

community if he were to be released.  Dkt. 51.

In reply, Mr. Mitchell asserts the government has minimized the conditions at

Yazoo City Low and that the BOP is failing to take adequate steps to contain and control

the virus.  He indicates the BOP's claims regarding the sufficiency of its response to the

pandemic are untrustworthy, and details Mr. Mitchell's living conditions which make social distancing to protect his own health impossible.  Dkt. 56

The government concedes that Mr. Mitchell is being held at a Bureau of Prisons facility that has experienced an outbreak of COVID-19 that includes positive tests, recoveries from the virus, and deaths.  The government has also outlined the series of methods that have been engaged to combat the disease.  This Court does not dispute that challenging and deadly conditions may exist at varying prison facilities around the United States, including FCI Yazoo City Low.  What is critical for this Court's determination of Mr. Mitchell's motion is whether his individual circumstances warrant compassionate release.

Considering the foregoing, what remains is Mr. Mitchell's fear of contracting the disease as opposed to suffering from the same, and the concern about the Bureau of Prisons' ability to provide a safe environment.

In this case, the Court does not find that Mr. Mitchell has demonstrated sufficient facts or evidence to warrant compassionate release. At best, he poses generalized questions about the uncertainty of next steps for COVID-19 in FCI Yazoo City Low and the restrictions on his daily living activities.

General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence as set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13. *United States v. Eberhart,* No. 13-cr-00313, 2020 WL 1450745 (N.D. Cal. Mar. 25, 2020.  Nor do such fears warrant a sentence reduction under the Court's independent assessment of the facts and circumstances presented.

**D.  Safety of Others**

The Court next turns to whether Mr. Mitchell presents a danger to the safety of any other person or to the community.  *See* U.S.S.G. §1B1.13(2).  In making this determination, the Court looks to the nature and circumstances of the underlying offense,

the weight of evidence against him, his history and characteristics, and the nature and seriousness of the danger his release would pose to any person or the community.  18 U.S.C. §3142(g).

Mr. Mitchell's criminal conduct in this matter was serious and supported by substantial evidence as contained in the Plea Agreement, which sets forth in detail the acts Mr. Mitchell agreed he committed, as outlined above.  Dkt. 31.

Mr. Mitchell asserts he would not pose a danger to the community if released immediately, particularly as he would be under the supervision of Probation.  He acknowledges his offenses are serious and his criminal history disturbing, but argues that the Court should balance his criminal history against his current circumstances.  He maintains that in light of his age and health issues, any danger is minimal and that the risks to Mr. Mitchell outweigh his potential danger to the community.  He argues that the Court can impose conditions of release adequate to protect others and the community, and that supervision will lessen his likelihood to reoffend.  Dkt. 48, 56.

The government responds that the evidence before the Court precludes a finding Mr. Mitchell is no longer a danger to the community and disagrees that any risk may be mitigated through Mr. Mitchell's suggested conditions of release.  The government highlights Mr. Mitchell's extensive criminal history.  PSR ¶¶ 105-116.  When Mr. Mitchell was 23 years old, he was convicted in Canada of Breaking and Entering, Armed Robbery, Possession of an Unregistered Restricted Weapon, Assault Causing Bodily Harm, and Kidnapping.  PSR ¶ 109.  When he was 29 years old, he was convicted of Bank Robbery in Florida and sentenced to 57 months in custody.  PSR ¶ 111.  Also when he was 29 years old, Mr. Mitchell was convicted in this district of five counts of Armed Bank Robbery and sentenced to 207 months of imprisonment.  PSR ¶ 113.  The conviction for which Mr. Mitchell is currently incarcerated is his third federal conviction for Bank Robbery.

The government argues that Mr. Mitchell's institutional history suggests he will continue his criminal activity should he be released, citing the multiple incidences of infractions Mr. Mitchell has received while in custody.  Dkt. 51, Ex. C.  The government contends Mr. Mitchell has demonstrated that he presents a risk to the community if released, that nothing about the COVID-19 pandemic reduces his danger to others and to the community, and that he poses a high risk of reoffending if he were to be released. Dkt. 51.

The Court agrees with the government's analysis and sees no mitigation of this concern from the record or proposal submitted by Mr. Mitchell.  The danger to the community that would be experienced by his release far outweighs his generalized concerns of contracting the COVID-19 virus.

### E.  Other 18 U.S.C. § 3553(a) Factors

Having made the foregoing determination, the Court sees no need to further address the 18 U.S.C. §3553 (a) factors.

The existence of COVID-19 is a significant concern to this Court, as well as Mr. Mitchell's well-being.  The §3553 factor analysis supported the sentence that was previously imposed and nothing in the current record warrants a modification in Mr. Mitchell's sentence and certainly not a reduction for compassionate release.

### F.  Consistency with Policy Statement

Last, the Court must determine whether Mr. Mitchell's compassionate release would be consistent with the relevant policy statement.  *See* U.S.S.G. § 1B1.13(3).  The policy requires the Court to make certain findings before granting an inmate's request for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  The Court has done so with the detail contained in this order.

///

///

///

ORDER  - 14

### III.  CONCLUSION

For the foregoing reasons, Defendant William Mitchell's motion for compassionate release is **DENIED**.

DATED this 8th day of July, 2020.

The Honorable Richard A. Jones
United States District Judge

ORDER  - 15